**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter Daniel COFFEY, Defendant-Appellant.**

**No. 25178.**

United States Court of Appeals,
Ninth Circuit.

July 13, 1970.

John T. Hansen (argued) San Francisco, Cal., Walter Daniel Coffey, Palo Alto, Cal., for defendant-appellant.

John G. Milano (argued), Asst. U. S. Atty., James L. Browning, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL, WRIGHT, and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from a conviction for refusing induction into the Armed Forces. 50 U.S.C. App. § 462(a). Under the compulsion of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), we reverse.

Coffey registered with his local board in 1961. Until 1965, he was classified I–A, although he sporadically attended the University of California at Berkeley during that period. From March 1965 to October 1965, and from January 1966, to October 1966, his local board granted him a student deferment.

In September 1966, Coffey requested a Special Form for Conscientious Objector, Selective Service Form 150. He failed to complete it, however, advising the board that "since my objection is not founded in a strictly religious belief, I could probably not qualify for Class I–A–O or I–O and I have not returned the form."

Three months later, he changed his mind. He informed the board that he had "come to believe that my beliefs would qualify me for conscientious objector status," and requested a second Form 150. This time he completed and returned it to the board on February 20, 1967. At its meeting March 16, 1967, the board voted to retain Coffey in class I–A denying his conscientious objector claim. He was granted a personal appearance before the board, but his claim was again rejected. The State Appeal Board upheld the local board's decision by a vote of 3–0.

Coffey's principal contention is that the statements on his Form 150, the text of which is given in the margin,[1] make out a prima facie case for entitlement to conscientious objector status. If that is so and unless there is other evidence in

1. "I believe that man is a Supreme Being in that he is the Supreme Being on this, the only planet we know is inhabited. As the Supreme Being on the planet, man has a special responsibility to preserve life on the planet. When man first began to gather into society, he could easily recognize that some restraints were needed to avoid errant individuals harming or killing other members of the society. Since the nation-state is but the modern form of primitive society, the same needs are recognized within the society and are acknowledged in law. The relations between nation-states need be no less protective of human life. Indeed, since several nations now possess enough power to destroy life as we know it, the precautions against self-destruction must be even more stringent.

"War under the present circumstances of nuclear capability is self-defeating for the species and must be avoided. For an individual who believes as I do, that its man's responsibility to preserve life on the planet, participation in war in any capacity is unthinkable.

"Aside from my general objection on the ground of man's responsibility and duty as Supreme Being on the planet, I object to the fact that war cannot be limited to voluntary participants. If war could be restricted to volunteer armies fighting each other under conditions where no harm would be done to innocent bystanders or conscripted soldiers, then such a war would be insane but surely harmless.

"The thought that a youth in one country can be conscripted to fight and possibly kill a youth from another country, similarly conscripted, is alien to the right of men to live as equals on this planet.

"I could not bring myself to kill anyone or harm anyone under such conditions.

"I acquired the belief which is the basis for my objection to war through living on this planet and reading the history of the alleged progress of civilization. War has been used in an attempt to settle conflict and has never succeeded. It has produced only death and destruction and has never settled a conflict and continues only to perpetuate itself. Now that war has become even more brutal and destructive, knowing the history of war, it seems unthinkable to continue such an insane method of resolving conflict.

"Anyone who has lived in this decade and has read the history of man cannot fail to view war as destructive and valueless and therefore must be opposed on every ground.

"Violence should always be avoided and resorted to only when there is no recourse such as in preventing physical damage to one's person in self-defense. Even in a case where violence becomes necessary it should be restricted and used with as much restraint as humanly possible.

"I do not know what I would do if I were placed in a position where violence would seem to be required. I have never become violent in the past, I doubt that I would be able to violently attack anyone, even in self-defense without grievous psychological consequences.

"The actions and behavior in my life which most conspicuously demonstrate the consistency and depth of my opposition to violence are that I have never knowingly harmed any human being or any animal which could feel pain.

"I have consistently avoided involving myself in situations which could lead to violent conclusions and have managed to avoid situations which would cause even psychological damage with few exceptions which I have regretted."

the record sufficient to provide a basis in fact for a local board finding of insincerity, we are obliged to hold that the board acted without jurisdiction in refusing to grant Coffey conscientious objector status, and his conviction must be reversed. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966).

■ The Government argues only that Coffey's beliefs were not "religious" within the meaning of § 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j). It is of course obvious from the Form 150 that Coffey's beliefs were religious in no ordinary sense of the word. But the test of religion for purposes of § 6(j) is no ordinary test. It is now settled that to entitle him to conscientious objection status, a registrant's beliefs "need not be confined in either source or content to traditional or parochial concepts of religion." Welsh v. United States, *supra*, 398 U.S. at page 339, 90 S.Ct. at page 1796.

■ It is sufficient that "an individual deeply and sincerely holds beliefs which are purely ethical or moral in source and content but which nevertheless impose upon him, a duty of conscience to refrain from participating in any war at any time." *Id.* at 340, 90 S.Ct. at 1796. Nor may conscientious objector status be denied merely because a registrant's objection to participation in war is "founded to a substantial extent upon considerations of public policy." *Id.* at 342, 90 S.Ct. at 1798. Only two groups of registrants may be excluded from conscientious objector status: "those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely on considerations of policy, prag-

matism, or expediency." *Id.* at 342, 90 S.Ct. at 1798.

■ Applying the *Welsh* standard to Coffey's statement of beliefs, we do not think it can be said that they do not rest "at all" upon moral, ethical, or religious principle. Coffey's statement equated killing in war with killing in peacetime: the reasons that have led civilized men to abstain from murder operated in his mind to make participation in war "unthinkable." It would be hard to find a clearer example of an objection to war based on moral principle.

Coffey's objection to war, he stated, was bottomed on what he said was "man's responsibility and duty as Supreme Being on the planet." This duty, in Coffey's view, is apparently one owing from all men to other men, and stems ultimately from what he says is man's "special responsibility to preserve life on the planet."

We are unable to distinguish Coffey's beliefs from the statement quoted by the Supreme Court in *Welsh*, *supra*, as an approved example of objection to war based on moral or ethical principle. Welsh said that he believed that "human life is valuable in and of itself; in its living." He said that this belief led to a "corresponding 'duty' to abstain from violence," which duty was not "superior to those arising from any human relation," *cf.* United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931) (dissent), but "essential to every human relation." *Welsh*, *supra*, 398 U.S. at 333, 90 S.Ct. 1792.

Both Welsh and Coffey believed they had a special duty to preserve life. Both believed that the duty to preserve life was necessarily owing from one man to another. Both thought that from this duty to preserve life there flowed a duty radically inconsistent with participation in war—in Coffey's case a duty not to harm "any human being or any animal which could feel pain;" in Welsh's case a duty "to abstain from violence toward another person." If Welsh's beliefs

rested on moral principle, we cannot see why Coffey's do not also.

Coffey's Form 150 stated that, given his beliefs, he could not bring himself to kill or harm anyone, and that participation in war was unthinkable. Such statements, we think, amount to an assertion that his beliefs were "deeply held," and that "his conscience would give him no rest or peace" if he were forced to become involved in war. *Welsh, supra,* at 333, 90 S.Ct. 1792. If they were true, therefore, they indicate that Coffey's intensity of belief was such that, given that his beliefs were based on moral principle, he had made out a prima facie claim to conscientious objector status.

It would of course have been open to the local board to deny Coffey conscientious objector status upon a finding that his statement of beliefs was insincere. The local board might have done this in one of two ways.

*First,* it might have determined that Coffey did not in fact believe what he said he did—*i. e.,* that he did not actually believe that man was a Supreme Being or that man have a special duty to preserve life. The local board might have based such a determination, for example, upon prior statements or actions of Coffey inconsistent with his stated beliefs.

*Second,* the board might have determined that, though Coffey in fact believed what he said he did, his belief was not "deeply held" within the meaning of *Welsh, supra,*—*i. e.,* that despite his beliefs he *could* bring himself to kill in war, or that the penalty for violating his beliefs would have been only a few pinpricks of conscience, as opposed to the stern remorse which the *Welsh* test requires.

If the local board made either determination, there is no indication of it in this record. The rule in this circuit is that when the registrant has made out a prima facie case the local board must state the reasons for its denial of the classification sought. Mount

v. United States (9th Cir., April 15, 1970); United States v. Haughton, *supra.* Cf. United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969); United States v. Washington, 392 F.2d 37 (6th Cir. 1968). Hence the denial of conscientious objector status to Coffey cannot stand.

Reversed.