UNITED STATES of America, Plaintiff-Appellee,

v.

William Alan CALLISON, Defendant-Appellant.

No. 23014.

United States Court of Appeals, Ninth Circuit.

Nov. 9, 1970.

---

James R. McCall (argued) Oakland, Cal., for appellant.

Paul G. Sloan (argued) Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., Jerrold M. Ladar, Chief, Criminal Division, San Francisco, Cal., for appellee.

Before MERRILL and BROWNING, Circuit Judges, and TAYLOR, District Judge *.

MERRILL, Circuit Judge:

The Supreme Court has remanded this case to us for further consideration in light of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Our original decision appears at 413 F.2d 133 (9th Cir. 1969). The Supreme Court action is noted sub nom. Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970).

We did not reach appellant's *Welsh* argument in our original opinion.[1] Instead, we rested our decision on the ground that there was a basis in fact in the record for a determination that appellant's beliefs were not sincerely held.[2]

We have concluded, however, that in light of intervening decisions by this court in United States v. Atherton, 430 F.2d 741 (9th Cir. 1970), and United States v. Haughton, 413 F.2d 736 (9th

---

* Honorable Fred M. Taylor, Chief United States District Judge for the District of Idaho, sitting by designation.

1. "Accordingly we do not reach the question tendered by appellant as to the meaning of 'religious training and belief' or the propriety of favoring opposition to war that is so founded." 413 F.2d at 137.

2. We noted that the Department of Justice report to the appeal board "in major part questioned whether appellant's opposition to war was conscientiously entertained rather than whether its source was religious training and belief." 413 F.2d at 137.

Cir. 1969), our original decision cannot stand.

## I

Appellant's local board, in denying him conscientious objector status stated:

"From a review of the statements in this form, you stated that your beliefs were part of your conscience, and that you did not know whether or not you believed in a Supreme Being. In no place did you state that your objections to war were based on any religious training or belief. From this, the Board could only assume that yours was purely a philosophical view or moral code and not one based on religious grounds."

■ In concluding that appellant's beliefs, even if sincerely held, did not fall within the statutory definition of a conscientious objector, the local board applied a standard that was contrary to Welsh v. United States, *supra*.

The administrative file discloses no findings by the appeal board. All that appears is a minute of its action classifying appellant I–A by a vote of three to nothing. It does appear that appellant was granted a hearing and that an inquiry was made by the Department of Justice. A resume of the inquiry is on file as is an advisory opinion of the Department of Justice, recommending denial of appellant's conscientious objector claim.

■ It is not clear from this record, however, that the Department and the appeal board rejected the illegal standard applied by the local board. As this court stated in United States v. Atherton, *supra*, "the general presumption that appeal boards act lawfully does not alone suffice to cure a local board's use of an illegal classification standard," 430 F.2d at 746. Here, as in *Atherton*, "the record is silent regarding the standard applied by the appeal board

and there is nothing to support an inference that it differed from that applied by the local board." 430 F.2d at 745.[3] Since the local board applied an erroneous standard and the appeal board has not stated the basis for its decision, we cannot determine whether Callison was properly denied conscientious objector status. *See* United States v. Haughton, 413 F.2d at 743.

## II

In claiming conscientious objector status appellant had stated in his 150 form: "My beliefs and my conscience make it impossible for me to engage in the systematic killing of other human beings"; and: "I believe that I'm part of a human consciousness to which I would do immoral violence by killing people or helping others to kill people." Further, with reference to the use of force, appellant stated: "I believe in using moral force to help overcome injustice; never in deliberately killing somebody."

The United States contends that these statements are insufficient to place appellant "prima facie within the statutory exemption." See United States v. Haughton, 413 F.2d at 739, 742. The Government's argument is that before an appellant can invoke the protection of *Welsh*, he must establish a prima facie claim to C–O status, which must include not only a recitation of views that come within the scope of the Act but also some affirmative evidence that those views are deeply and sincerely held.

■ Assuming, without deciding, that the Government correctly states the prima facie showing that must be made to invoke *Welsh*, we find that the information in appellant's selective service file establishes a prima facie case. It is true that appellant's views were not articulated at length in his 150 form and that he gave the local board no basis whatsoever for judging the degree of

3. As our earlier opinion indicates, appellant inferred the contrary—that the appeal board had acted for the same reasons as the local board. We rejected this conclusion since the record would equally support the contrary inference.

sincerity with which he entertained them. But, as we have noted, it was not lack of sincerity that formed the basis for the local board's action. The appeal board had before it an inquiry resume containing much material bearing on the question of sincerity. While this material provided basis in fact for a determination of lack of sincerity, it also provided sufficient support for appellant's views to establish a prima facie claim. Among other matters reported, a student acquaintance of appellant stated that appellant's concern for living creatures and his aversion to killing was of long standing, was deepseated and was extreme to the point of idiosyncrasy.

We conclude that on the authority of United States v. Atherton, *supra*, and United States v. Haughton, *supra*, judgment must be reversed. It is so ordered.